AGNES H. GEORGE *v.* FARMERS' AND MER-
CHANTS' NATIONAL BANK OF
CAMBRIDGE.

[No. 35, April Term, 1928.]

*Decided June 21st, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Alan Goldsborough,* with whom were *J. Owen Knotts, Edward H. Brown, Jr.,* and *Madison Brown,* on the brief, for the appellant.

*A. Stengle Marine, Fred. R. Owens, W. Brewster Deen, William J. Richards* and *J. H. C. Legg,* submitting on brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

In 1920 a judgment was entered against the appellant and Nathaniel B. Harper her husband on a confessed judg-

ment note, which was later stricken out and the case put on the trial docket. This case was subsequently tried and resulted in a verdict and judgment for the present appellant, Agnes H. Harper. An appeal was taken to this court, which was heard and resulted in a reversal of the judgment; at the conclusion of the opinion the court saying: "Judgment reversed, with costs to the appellant." (See *Farmers' & Mchts. Nat. Bank v. Harper,* 151 Md. 358.) Later, upon petition, a reargument was allowed; and at the close of the opinion on the reargument we said: "Former judgment of this court affirmed on reargument, with costs to appellant." (See 153 Md. 128.) The mandate is set forth in the present record and contains the following: "1927, February 9th. Motion for reargument granted, per order of court filed. 1927, May 6th. Former judgment of this court affirmed on reargument, with costs to appellant. Opinion filed."

Upon the receipt of this mandate by the Circuit Court for Queen Anne's County, the case was placed upon the trial docket of that court. Whereupon counsel for both parties entered their appearance. The mandate was received on June 8th, 1927, and the docket entries contained in the present record show that on July 18th, 1927, the case was continued; that on October 7th, 1927, a motion was made by the defendant's attorney for commission to take testimony in the City of Philadelphia; that on November 7th, 1927, the case was set for trial for December 5th, 1927; that on the latter date the attorney for defendant made known to the court that Agnes H. George, formerly Agnes H. Harper, was sick and unable to attend court. Upon that day an additional plea was offered by the defendant, to which plea a motion *ne recipiatur* was interposed by the plaintiff and granted by the court; the case was then continued until the fourth Monday in January, 1928. The docket entries further show: "Motion and leave to amend proceedings by changing name of defendant from Agnes H. Harper to Agnes H. George. January 23rd, 1928: Motion by defendant's attorney to file additional plea; motion granted; motion by plaintiff's attorney that motion granted to file

additional plea be rescinded. Motion by plaintiff's attorney that plea filed under leave to file additional plea be not received." This latter motion being granted, to this action of the court and its action on the plea of December 5th defendant excepted. The trial court then ruled: "That the official report of the first decision of the Court of Appeals and a mandate showing that on reargument the former judgment of the Court of Appeals was affirmed. This court held that the case is before us for trial. To which ruling of the court the defendant excepts. Trial before the court." The verdict of the court· was for the plaintiff in the sum of $8,360.42; and from the judgment on that verdict the appeal in the case now before us is taken.

The appellant's brief and oral argument in this court are confined to the alleged error of the trial court in granting the motion *ne recipiatur* on behalf of the plaintiff to the pleas filed by the appellant. Before dealing with this phase of the case, however, we will advert to the situation existing at the time the case was heard below, and to the ruling of the trial court, wherein it was held that the case was properly before it for trial. In the first trial of the case, and which came before us on appeal, the judgment below was in favor of the defendant Agnes H. Harper. In that trial the defendant was allowed to file a plea of forgery subsequent to the filing of the general issue pleas by her, and joinder of issue on these general issue pleas. This court held that that ruling by the trial court was erroneous, for reasons set forth in the opinion in the case of *Farmers' & Merchants' Bank v. Harper,* 151 Md. 358; the judgment following the opinion being: "Judgment reversed, with costs to the appellant." On the reargument, as stated, the former judgment of the court was affirmed in these words: "Former judgment of this court affirmed on reargument, with costs to the appellant." Neither in the first judgment nor the one after the reargument was there a new trial awarded, in terms. The effect of the opinions of this court was to hold that the plea of forgery could not be filed or set up as a defense to the suit on the note after the general issue plea

had been filed; in other words, that the case should be re-tried with the defense of forgery eliminated; and we find no error in the lower court, upon receipt of the mandate, reinstating the case on the trial docket and proceeding with the trial thereof, in accordance with the views expressed in the opinions of this court. The omission of the words "new trial awarded," or language indicating a *procedendo,* was a clerical omission or oversight on the part of the court. This is clearly indicated by the opinions in the previous cases, because those opinions show that the purpose and intention of this court was that a new trial should be had, in which the defense of forgery would be excluded. This purpose would be entirely frustrated if the judgment and mandate of this court could not be corrected to conform with that intent.

Upon receipt of the mandate of this court, it may be that the better practice would have been for the appellee here to have filed a petition in this court asking that the judgment and mandate be amended to conform to what was the clearly expressed intent of the court in its opinion. In such a case there can be little doubt that this court has the inherent power to correct such errors. In 34 *C. J.* 235, it is said: "If anything has been omitted from the judgment which is necessarily or properly a part of it, and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or counsel, or the clerk, the omission may be supplied by an amendment even after the term." 23 *Cyc.* 864-9 ; 15 *R. C. L.* 682, sec. 133. The general principle above stated is sup-ported by the great weight of authority throughout this coun-try, reference being made to 34 *C. J.* 235, note 1. At page 229 of the same volume it is stated: "The court, at any time either before or after the expiration of the term at which a judgment was rendered, or of the statutory period within which judgments may be amended, may correct or amend clerical errors and misprisions of its officers, so as to make the record entry speak the truth and show the judgment which was actually rendered by the court. The term 'clerical error'

as here used must not be taken in too narrow a sense. It includes not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion."

In *Pickett's Heirs v. Legerwood*, 7 Pet. (U. S.), 147, the court said that the same end sought by the writ of *coram vobis* is now, in practice, generally obtained by motion, sustained, if the case require it, by affidavit; and it was added that the latter mode had so far superseded the former in the British practice that Blackstone did not even notice the writ as a remedy. In the case of *State v. F. B. Williams Cypress Co.*, 132 La. 949, Ann. Cas. 1914D, 1290, the court said:

"Beyond, or, perhaps, among, the errors, the power to correct which is thus attributed to the writ of *coram vobis,* it is universally conceded that every court has the inherent power, without reference to statutory authority, to correct clerical errors in order to show what was actually done and thereby make its record conform to the truth, and the better opinion seems to be that a clerical error may be committed by the court, as well as by the clerk, and that a court may amend its record, not only to show what was actually done, but to incorporate in its judgment that which is necessarily or properly, and which was intended and understood to be, a part of it, and which failed to be so incorporated through the · negligence or inadvertence of the court or the clerk."

"An appellate court has power to recall its mandate after it has been received in the court below, and to correct any error or irregularity therein, or an inadvertence in issuing it. In such case the *remittitur* is not recalled upon the theory that the appellate court can resume a jurisdiction once lost, but upon the principle that an order made inadvertently may be treated as a nullity and the case considered as still pending in the court for the purpose of correcting the error, irregularity, or inadvertence." Note to *Ott v. Boring,* 11 Ann. Cas. 867 (131 Wisc. 472).

In *Titlow v. Cascade Oatmeal* Co., 16 Wash. 676, a motion was made, after the *remittitur* had been sent down and filed, to recall the mandate and to correct the same so that the judgment would conform to the opinion of the court. An objection was made to the motion that the appellate court had lost jurisdiction of the case by reason of the *remittitur* having been transmitted to and filed in the lower court. The court in that case said: "The presumption must be that the judgment is entered in accordance with the opinion of the court, and it would be a hard and unjust rule to announce that, if by inadvertence or mistake the judgment should be entered not in conformity with the opinion, the respondent would have no redress. We think that in all jurisdictions under a practice similar to ours the court has power to recall the *remittitur* and enforce the judgment according to the opinion rendered in the case." 11 *Ann. Cas.* 867, note. Also see cases cited in the note to *Olt v. Boring, supra.* It follows that, as this court had the power and would have made the correction, had it been applied to for that purpose, it will affirm the action of the lower court in assuming jurisdiction of the case, and hearing the case in the same manner as if the judgment of this court had been: "Judgment reversed, and a new trial awarded, with costs to the appellant."

The other two exceptions contained in the record bring before us for review the action of the trial court in refusing the equitable pleas of the appellant. These pleas were slightly different in form, but were identical in substance, and sought, by adding the words, "for defense on equitable grounds," to set up the defense of forgery, which in the previous appeal of this case was decided by this court could not be done by the appellant after having first filed the general issue plea. These pleas were properly rejected, for two reasons: First, because a plea for defense on equitable grounds, which sets up a defense good at law, is fatally defective. In the case of *Albert v. Freas,* 103 Md. 583, at page 591, Judge Burke, speaking for the court, in dealing with a plea filed upon equitable grounds, said: "Where the

defense relied on is available at law it cannot be set up as an equitable plea under the Act of 1888, ch. 547. This point has been definitely settled by the cases of *Taylor v. State*, 73 Md. 222, and *Robey v. State, use of Mallery*, 94 Md. 61." To the same effect see *Bond v. Murray*, 118 Md. 450; *McGrath v. Peterson*, 127 Md. 412; *Jenkins v. First Nat. Bank of Balto.*, 134 Md. 85; *Leonard v. Union Trust Co.*, 140 Md. 203. The defense sought to be set up by the plea for defense on equitable grounds here was that of forgery. Forgery is a defense available at law, and, under the authorities cited, cannot be made the subject of such a plea.

Even if this defense could be made the subject of such a plea, it would not be available in this case, for the reason that that defense had been eliminated by the former decision of this court in the case between these parties. In *Gott v. Carr*, 6 G. & J. 309, Chief Judge Buchanan said: "It is a salutary principle of law that every person is bound to take care of and protect his own rights and interests, and to vindicate them in due season, and in the proper place. And that if a defendant having the means of defense in his power in an action against him, in a competent tribunal, neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in chancery, in relation to the same matter. The application of this principle may not be universal; but the cases in which chancery will furnish relief against recoveries suffered to be had at law, are exceptions. The well settled general rule being, that a court of equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts, or on grounds, of which the party seeking the aid of chancery could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his own part. And chancery will only sustain a bill invoking its aid upon some new matter of equity, not arising in the former case; or seeking some relief, to which the powers of the court of law were not fully adequate. It is a sound and useful rule in the administration of justice,

for the prevention of negligence, and harassing and protracted litigation, and the consequent burdensome accumulation of costs. A material departure from, or relaxation of which, would prove vexatious in practice, and be felt as a public grievance, by the great delays, and sometimes abuse of justice, to which it would lead."

The above principle has been re-affirmed in many decisions of this court, among which are *Dilly v. Barnard,* 8 G. & J. 185; *Briesch v. McCauley,* 7 Gill, 197; *Lyday v. Douple,* 17 Md. 195; *O'Neal v. Bridge Co.,* 18 Md. 24; *Webster v. Hardisty,* 28 Md. 599; *Jameson v. Hall,* 37 Md. 22; *Ewing v. Nickle,* 45 Md. 415; *Hill v. Reifsnider,* 46 Md. 563; *Darling v. Baltimore,* 51 Md. 10; *Kirby v. Pascault,* 53 Md. 536; *Cumberland & Pa. R. Co. v. Penna. R. Co.,* 57 Md. 273; *Wagner v. Shank,* 59 Md. 318; *Little v. Price,* 1 Md. Ch. 182; *Kent v. Richards,* 3 Md. Ch. 397; *Iglehart v. Lee,* 4 Md. Ch. 527. The firmly established principle deducible from these authorities is that, to entitle a complainant to the aid of a court of equity to restrain by injunction the execution of a judgment rendered against him, he must not only show that there is injustice in the rendition or enforcement of the judgment, but he must also show that his own conduct and dealings in the matter have been in all respects fair and consistent with equity. If he has been negligent or inattentive to the case while pending, and by his own conduct brought about the state of things of which he complains, a court of equity can afford him no relief. *Ewing v. Nickle, supra.* The principle enunciated applies in cases where application is made to a court of equity for relief, and must be held to apply with equal or greater force to defenses sought to be set up by a plea on equitable grounds in a retrial of the same case at law. There was no error in the rulings of the lower court, and the judgment will be affirmed.

*Judgment affirmed, with costs to the aappellee.*